UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| QLS LOGISTIC SERVICES, LLC, d/b/a<br>AMERICAN INTERMODALOGISTICS,<br><br>Plaintiff,<br><br>v.<br><br>JAWS ASSOCIATES, LLC, SONIA<br>CARSON, STEPHANIE WILLIAMS, and<br>MICHELLE MOORE,<br><br>Defendants, | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No. 17-cv-11891-ADB<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## MEMORANDUM AND ORDER ON
## SECOND RENEWED MOTION FOR DEFAULT JUDGMENT

BURROUGHS, D.J.

On October 3, 2017, Plaintiff QLS Logistic Services, LLC d/b/a American IntermodaLogistics filed a Complaint against Defendants JAWS Associates, LLC ("JAWS"), Stephanie Williams, Sonia Carson, and Michelle Moore (collectively, "Defendants") alleging a violation of M.G.L. c. 93A (Count IV) and claims for breach of contract (Counts I and V) and breach of good faith and fair dealing (Count III), and seeking injunctive relief (Count VII), an accounting (Count II), and attorney's fees and costs (Count VI). [ECF No. 1]. After Defendants failed to appear or otherwise defend this action, a default was entered on November 14, 2017. [ECF Nos. 11–14]. Currently pending before the Court is Plaintiff's second renewed motion for a default judgment against Defendants. [ECF No. 22]. For the following reasons, the motion is GRANTED.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

Following the entry of a default, "the facts alleged in the complaint are taken as true." Plasterers' and Cement Masons' Local 40 Pension Fund v. D & M Concrete Finishing, No. 12-256, 2013 WL 2432420, at *1 (D.R.I. June 4, 2013) (quoting Queally v. Estate of Hoviss, No. 10−002, 2011 WL 6026593, at *1 (D.R.I. Dec. 2, 2011)); see Franco v. Selective Ins. Co., 184 F.3d 4, 9 n.3 (1st Cir. 1999) (defaulted party is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated"). Accordingly, the following summary of facts is drawn from the Plaintiff's complaint, with certain details sourced from the supplemental documentation submitted in support of the motion for entry of default judgment [ECF No. 16], the renewed motion for entry of default judgment [ECF No. 18], and the second renewed motion for entry of default judgment [ECF No. 22].

Plaintiff provides intermodal logistics services, including port and rail container drayage, terminal operations, dedicated truckload solutions, transloading, warehousing, and distribution services, to customers throughout North America. [ECF No. 1 ¶ 9]. On March 10, 2016, Plaintiff entered into an Independent Agent Agreement with JAWS Enterprises. [ECF No. 1-1 (hereinafter, the "Agreement")]. Defendants Moore, Carson, and Williams executed a Personal Guarantee in which they agreed to be personally bound by Sections 7 and 9 of the Agreement [ECF No. 1-1 at 25] and also formed the limited liability company JAWS Associates, LLC to be the counterparty to the Agreement [ECF No. 1 at ¶ 10].[1]

---

[1] Although "JAWS Enterprises" is the name of the entity with whom Plaintiff entered the Agreement, taking all facts in the Complaint as true, the Court finds that JAWS Enterprises is the trade name for JAWS Associates, LLC, which is the true party that performed under the contract and the real party in interest under Federal Rule of Civil Procedure 17(a). [ECF No. 1 ¶¶ 10, 18, 20].

Pursuant to the Agreement, Defendants agreed to support Plaintiff's transportation business by establishing and operating a terminal facility within an assigned territory, soliciting customers for Plaintiff's transportation services, and recruiting "Owner-Operators" to lease tractors and provide drivers for the purpose of transporting goods to Plaintiff's customers. [Id. ¶ 11]. The Agreement provided that Defendants would provide Plaintiff with all documentation required to invoice customers for services provided under the Agreement, and that Plaintiff would then issue all customer invoices, which would be payable to Plaintiff. [Id. ¶ 12–13]. At some point, Defendants breached Sections 2.8(e) and 5.1 of the Agreement by withholding the documentation necessary for Plaintiff to bill and collect payments from its customers for various charges. [Id. ¶¶ 12, 21]. In addition, Defendants breached Section 7 of the Agreement by surreptitiously ceasing all business with Plaintiff and commencing operations with one of Plaintiff's competitors. [Id. ¶¶ 20, 22]. On September 15, 2017, Plaintiff notified Defendants by letter that they had breached the Agreement and sought to mitigate damages as a result of the breach. [Id. ¶ 23]. Defendants did not respond to Plaintiff's September 15, 2017 letter or other communication attempts. [Id.].

Ultimately, on October 3, 2017, Plaintiffs filed the instant Complaint. [ECF No. 1]. On October 19, 2017, Plaintiff filed affidavits of service showing that JAWS had been served by its registered agent in Chesapeake, Virginia on October 12, 2017, and that Defendants Williams and Carson had each been personally served in Chesapeake, Virginia on October 12, 2017. [ECF Nos. 6–8]. On October 24, 2017, Plaintiff filed an affidavit showing that Defendant Moore had been personally served in Portsmouth, Virginia on October 13, 2017. [ECF No. 9]. The deadline for Defendants JAWS, Williams, and Carson to respond to the Complaint was November 2, 2017, and the deadline for Defendant Moore to respond to the Complaint was

3

November 3, 2017. After they failed to answer or otherwise respond to the Complaint, Plaintiff filed a motion for the entry of a default against Defendants pursuant to Federal Rule of Civil Procedure 55(a), and the clerk entered defaults as to each Defendant on November 14, 2017. [ECF Nos. 11–14].

On February 8, 2018, Plaintiff moved for the entry of a default judgment pursuant to Fed. R. Civ. P. 55(b). [ECF No. 16]. On May 10, 2018, the Court denied Plaintiff's motion with leave to renew, and explained, *inter alia*, that Plaintiff's motion failed to provide any documentation concerning how it determined actual damages or attorney's fees. [ECF No. 17]. On July 13, 2017, Plaintiff filed a renewed motion for default judgment [ECF No. 18], which the Court again denied with leave to renew due to insufficient documentation of attorney hours billed [ECF No. 21]. On September 7, 2018, Plaintiff filed its second renewed motion for default judgment. [ECF No. 22]. Defendants have not filed a response to any of Plaintiff's default judgment motions.

## II. DISCUSSION

### A. Jurisdiction

As an initial matter, the Court "has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties" before entering a default judgment. Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp., No. 09-236, 2010 WL 1424722, at *2 (D.R.I. Mar. 12, 2010), aff'd and adopted, 2010 WL 1376293 (D.R.I. Apr. 6, 2010). The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000 and there is complete diversity. [ECF No. 1 ¶¶ 1–3, 7]. As to personal jurisdiction, "[a] party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection clause." Inso

Corp. v. Dekotec Handelsges, mbH, 999 F. Supp. 165, 166 (D. Mass. 1998) (citing M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 11, (1972) ("[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court."); Jacobson v. Mailboxes, Etc. U.S.A., 646 N.E.2d 741, 743–44 (Mass. 1995)). "Massachusetts also recognizes forum selection clauses as a valid basis for finding jurisdiction over a non-resident." Inso Corp., 999 F. Supp. at 166 (citing Leasecomm Corp. v. Crockett, 1998 WL 15935, *2 (Mass. App. Div.); Jacobson, 646 N.E.2d at 743–44). Here, the Court has personal jurisdiction over JAWS because the Agreement provides that:

> The Parties agree that all actions or proceedings arising in connection with this Agreement, including where federal jurisdiction may apply, shall be tried and litigated only in the courts located in the Commonwealth of Massachusetts. The Parties expressly submit and consent in advance to such jurisdiction in any action or proceeding commenced in any such court, and the Parties waive any objection that may have been based upon lack of personal jurisdiction and consent to the granting of any legal or equitable relied as is deemed appropriate by any such court.

Agreement at § 11.8. Defendants Carson, Williams, and Moore, however, are not subject to Section 11.8 of the Agreement. [See ECF No. 1-1 at 25]. As a result, for those Defendants, "[f]or 'specific' or 'case-linked jurisdiction' to apply, the suit must arise out of or relate 'to the defendant's contacts with the forum.'" Geis v. Nestle Waters N. Am., Inc., 321 F. Supp. 3d 230, 237–38 (D. Mass. 2018) (quoting Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty., 137 S.Ct. 1773, 1780 (2017)). "To exercise specific jurisdiction over a defendant, the district court must 'find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause.'" Id. (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)).

The Massachusetts long-arm statue provides that "[a] court may exercise personal jurisdiction over a person . . . arising from the person's . . . transacting any business in the

5

commonwealth." M.G.L. c. 223A, § 3(a); see also Aldabe v. Envtl. Servs., Inc., No. 16-cv-11067-MLW, 2017 WL 7035658, at *2 (D. Mass. Sept. 20, 2017) ("For jurisdiction to exist . . . 'the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant.'" (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 769–71 (1994))). "The definition of 'transacting any business' is construed broadly, and courts look to whether the defendant attempted to participate in the Commonwealth's economic life." Geis, 321 F. Supp. 3d at 238. "A defendant need not be physically present in a state to 'transact business' in the state. . . ." Energy Capital & Servs. LP, II v. Hill Refrigeration, Inc., 989 F. Supp. 353, 355 (D. Mass. 1997).

Here, considering "the relations between the parties, their respective activities under the contract, and the linkages . . . between the defendant's participation in the transaction and Commonwealth of Massachusetts," the Court finds that Defendants Carson, Williams, and Moore have transacted business in Massachusetts and Plaintiff's claims have arisen from those transactions. Id. First, Defendants entered into an open-ended contract with an entity that they knew was based in Massachusetts. [ECF No. 1-1 at 1]. Although it appears that Defendants performed the relevant logistics services from outside of Massachusetts, the Agreement provided that JAWS would transmit documentation of all fees and charges to Plaintiff in Massachusetts to be included on Plaintiff's invoices. JAWS would receive weekly commissions from Plaintiff in Massachusetts, and Defendants Carson, Williams, and Moore agreed to indemnify Plaintiff for any losses resulting from JAWS' performance or failure to perform the services under the Agreement. [ECF No. 1-1 at §§ 2.4, 2.8, 5.1–5.4, 6.1, 9]. Defendants' course of business conduct is sufficient to amount to "transacting business" within the meaning of the statute. See,

e.g., Good Hope Indus., Inc. v. Ryder Scott Co., 389 N.E.2d 76 (Mass. 1979) (where foreign corporation initiated telephone communications to Massachusetts, mailed monthly invoices to Massachusetts, and regularly accepted payments from Massachusetts bank account, such activities were sufficient to constitute "transacting business" within the meaning of the Massachusetts long-arm statute).

Moreover, Defendants' contacts are sufficient to satisfy the Due Process Clause. To analyze whether it may exercise specific jurisdiction under the Due Process Clause, the Court applies a three-part framework:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Pritzker v. Yari, 42 F.3d 53, 60–61 (1st Cir. 1994) (quoting United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992)). These are known as the "relatedness," "purposeful availment," and "reasonableness" prongs. Id.

A claim satisfies the relatedness prong where there is a "demonstrable nexus between [the plaintiff's] claims and [the defendant's] forum-based activities, such . . . that the litigation itself is founded directly on those activities." Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011). Plaintiff's claims satisfy this prong because, prior to Defendants' breach of the agreement, they directed communications to and received payments from Massachusetts, and Defendants' failure to send the relevant invoice documentation to Massachusetts is fundamental to their breach of the Agreement.

For the purposeful availment prong, the "'key focal points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling

subject to Massachusetts's jurisdiction." Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016) (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007)). As described above, Defendants entered into an open-ended contract with a Massachusetts entity through which JAWS consented to personal jurisdiction in Massachusetts in the forum selection clause. Accordingly, Defendants Carson, Williams, and Moore could "reasonably anticipate being hauled into court" in Massachusetts to enforce the Agreement. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 28 (1st Cir. 2008).

Finally, under the reasonableness prong, the Court looks to the "Gestalt" factors: "(1) the defendant's burden of appearing in the forum state, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Baskin–Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 40 (1st Cir. 2016). Here, the first factor is neutral because Defendants' burden of defending in Massachusetts is afforded little weight. See Old United Cas. Co. v. Flowers Boatworks, No. 15-cv-43-DBH, 2016 WL 1948873, at *8 (D. Me. May 3, 2016) ("[S]imply having to defend oneself in a forum other than one's home is not enough."). The second factor favors Plaintiff, as Massachusetts has an interest in adjudicating the dispute because the Agreement is subject to Massachusetts law. [ECF No. 1-1 at § 11.8]. The third factor favors Plaintiff because the Court "must accord plaintiff's choice of forum a degree of deference in respect to the issue of its own convenience." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir. 1994). The fourth factor also favors Plaintiff because, pursuant to the forum selection clause, Plaintiff must litigate the suit against JAWS in Massachusetts, and allowing Plaintiff to sue all Defendants in the same forum promotes "the

8

goal of judicial economy" and avoids "conjur[ing] up the chimera of inconsistent outcomes." Pritzker, 42 F.3d at 64. The fifth factor is not implicated, as this contract dispute does not appear to bear on any substantive social policy. See Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 83 (1st Cir. 2013) (finding no substantive social policy implicated by corporate breach of contract claim). On balance, the Court finds that exercising jurisdiction over Defendants Carson, Williams, and Moore is reasonable.

Thus, the Court has both subject matter jurisdiction and personal jurisdiction over Defendants in this action.

### B. Liability and Damages

On a motion for a default judgment, the Court considers "all well-pleaded factual allegations as true . . . to determine whether [the complaint] alleges a cause of action." Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). The Court finds that Plaintiff has adequately pleaded that Defendant JAWS has breached Sections 2.8(e) and 5 of the Agreement, that Defendants have breached Section 7 of the Agreement, and that Defendants are liable to Plaintiff for all losses arising out of or resulting from the breach, including damages, attorney's fees, and costs, under Section 9 of the Agreement (Counts I, V, and VI). "To prove a breach of contract under Massachusetts law, a plaintiff must show 'that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage.'" Shaulis v. Nordstrom Inc., 120 F. Supp. 3d 40, 54 (D. Mass. 2015), aff'd, 865 F.3d 1 (1st Cir. 2017) (citation omitted). Here, Plaintiff has alleged that: (i) it entered into the Agreement with Defendants [ECF No. 1 ¶10; ECF No. 1-1]; (ii) Defendant JAWS breached Sections 2.8(e) and 5 of the Agreement by withholding the documentation necessary for Plaintiff to bill and collect payments from its customers, and all Defendants

9

breached Section 7 of the Agreement when they stopped doing business with Plaintiff in favor of doing business with one of Plaintiff's competitors [ECF No. 1 ¶¶ 12, 20–22]; and (iii) that, as a result of Defendants' breach, Plaintiff suffered damages by incurring charges and expenses for which Plaintiff cannot seek reimbursement [id. ¶ 27–28]. Further, Plaintiff alleged that, pursuant to Section 9 of the Agreement, Defendants are responsible for indemnifying Plaintiff for "any and all losses, damages, costs, expenses, or claims, including attorney fees, that may be suffered or incurred by [Plaintiff] relating to . . . [JAWS's] performance or failure to perform" under the Agreement. [Id. at ¶ 15; ECF No. 1-1 at § 9].

In addition, Plaintiff has adequately pleaded that Defendants breached the duty of good faith and fair dealing (Count III). "[T]o establish a breach of the covenant of good faith and fair dealing, a plaintiff must prove that there existed an enforceable contract between the two parties and that the defendant did something that had the effect of destroying or injuring the right of (the plaintiff) to receive the fruits of the contract." Blake v. Prof'l Coin Grading Serv., 898 F. Supp. 2d 365, 388 (D. Mass. 2012) (citation and quotation marks omitted). "In order to prevail on this claim, plaintiffs must show that defendant 'acted with . . . dishonest purpose or conscious wrongdoing necessary for a finding of bad faith or unfair dealing.'" Conte v. Bank of Am., N.A., 52 F. Supp. 3d 265, 269 (D. Mass. 2014) (quoting Schultz v. R.I. Hosp. Trust Nat'l Bank, N.A., 94 F.3d 721, 730 (1st Cir. 1996)). Taking the Complaint allegations as true, Defendants failed to submit or submitted fraudulent information to Plaintiff from which it created customer invoices, resulting in Plaintiff not receiving the customer payments to which it was entitled under the Agreement and damage to Plaintiff's relationships with its customers. [ECF No. 1 ¶¶ 21, 35–36]. This is sufficient to show a violation of the duty of good faith and fair dealing.

Plaintiff has also adequately pleaded that Defendants violated M.G.L. c. 93A (Count IV).

Under Chapter 93A, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." M.G.L. c. 93 A, § 2(a). "Conduct is unfair or deceptive if it is 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness' or 'immoral, unethical, oppressive, or unscrupulous.'" 4M Fruit Distribs., Inc. v. Crescent Produce, Inc., No. 13-cv-12808-FDS, 2014 WL 2547557, at *5 (D. Mass. June 4, 2014) (quoting Cummings v. HPG Int'l Inc., 244 F.3d 16, 25 (1st Cir.2001)). The Complaint alleges that Defendants surreptitiously terminated their relationship with Plaintiff and intentionally failed to provide it with accurate documentation in order to disrupt its ability to invoice its customers. [ECF No. 1 ¶¶ 38–41]. The Complaint further alleges that Defendants deliberately sought to impair Plaintiff's customer relationships so that Defendants could gain an economic advantage when they transitioned to working for one of Plaintiff's competitors. [Id.]. These allegations are sufficient to state a plausible claim under Chapter 93A.[2]

Because Defendants have not responded to the entry of a default, the entry of a default judgment is now appropriate. "While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof . . . ." KPS & Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). In calculating damages, the Court may conduct a hearing but is not required to do so, particularly where the facts alleged, together with declarations submitted by the moving

---

[2] The Court finds that Plaintiff did not adequately plead its right to an equitable accounting (Count II) because it did not plead the existence of a fiduciary relationship between Plaintiff and Defendants. See Beram v. Ceaco, Inc., 219 F. Supp. 3d 274, 282 (D. Mass. 2016) ("The existence of a fiduciary relationship is a prerequisite for an equitable accounting claim under Massachusetts law."). Further, while Count VII of the Complaint seeks injunctive relief pursuant to Section 7 of the Agreement, Plaintiff's second renewed motion for default judgment does not seek injunctive relief and, accordingly, the Court does not award it.

party, adequately establish the amount of the default judgment. See In re The Home Restaurants, Inc., 285 F.3d 111, 114–15 (1st Cir. 2002) (district court did not abuse its discretion by entering default judgment without a hearing, where there was "no uncertainty about the amounts at issue," the pleadings contained "specific dollar figures," and the court requested and received affidavits in support of the default judgment).

Plaintiffs seek a default judgment in the amount of $85,362.03, comprised of the following:

- $71,843.93 in actual damages, consisting of: $11,091.38 in unpaid chassis charges; $60,443.75 in unpaid per diem charges; $870.00 in customer claims; $7,319.96 in negative Owner-Operator balances; and $857.84 in unpaid charges related to the untimely removal of containers from port, less $8,739.00 held for the benefit of Defendants in escrow.

- $13,518.10 in attorney's fees and costs, consisting of: $12,604.10 in attorney's fees; $400 in court filing fees; and $514 in fees for service of process.

[ECF Nos. 22, 22-1, 23].[3]

In support of their motion, Plaintiff provided the Court with: (i) the Supplemental Declaration of Thomas Weed, Plaintiff's Director of Financial Planning and Analysis, which accounts for the actual damages sought by Plaintiff [ECF No. 22-1] and (ii) the Declaration of Laura A. Otenti, which documents the number of hours worked, tasks performed, and hourly rate of Plaintiff's attorneys and the litigation costs incurred [ECF No. 23].

---

[3] Plaintiff does not seek multiple damages, see ECF No. 18. Accordingly, the Court does not address whether the Complaint adequately pleads an entitlement to multiple damages under Chapter 93A.

Upon consideration of the amended motion and accompanying materials described above, the Court agrees that Plaintiff is owed a total of $71,843.93 in actual damages, comprised of the amounts set forth in Plaintiffs' second renewed motion for entry of default judgment. The Court also awards Plaintiff prejudgment interest, which the Court calculates at the statutory rate of twelve percent per annum as of October 3, 2017. See M.G.L. c. 231, § 6C (providing that, in actions based on contractual obligations, prejudgment interest shall be added from the date of the commencement of the action where the date of breach or demand is not established).

The Court also finds that under the Agreement and M.G.L. Chapter 93A, § 11, Plaintiff is entitled to an award of its attorney's fees and costs. "When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar." Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011) (citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551–52 (2010)). "In general, the lodestar is the product of the number of hours appropriately worked times a reasonable hourly rate or rates." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001)). "The party seeking the award has the burden of producing materials that support the request." Id. (citing Hensley, 461 U.S. at 433). While the lodestar "constitute[s] the usual starting point," the Court's "discretion is by no means shackled by" the prevailing party's time records. Gay Officers Action League, 247 F.3d at 296. "For example, it is the court's prerogative (indeed, its duty) to winnow out excessive hours, time spent tilting at windmills, and the like." Id. (citing Coutin v. Young & Rubicam P.R., Inc., 124 F.3d 331, 337 (1st Cir. 1997)).

Plaintiff was represented by Richard Bickelman, Laura Otenti, and their associates from Posternak Blankstein & Lund LLP. The Otenti Declaration states that Bickelman and Otenti, combined, have over 50 years of experience in civil litigation and transportation law matters.

13

Bickelman charged an hourly rate of $535.00 and spent 11.2 hours on this case in connection with preparing the Complaint and completing other matter-related tasks. Otenti charged an hourly rate of $380 and spent 12.8 hours on this case in connection with preparing the Complaint, coordinating service of process, preparing the motion for default judgment, and completing other matter-related tasks. In addition, former associate Catherine Lombardo charged an hourly rate of $235 and spent 0.46 hours on this case in connection with coordinating service of process, and paralegal Jose A. dos Santos charged an hourly rate of $205 and spent 8 hours on this case in connection with coordinating service of process.

The Court finds that the rates for Bickelman and dos Santos do not appear to be entirely reasonable under the circumstances. Overall, this case was a straightforward breach of contract action. Based on their experience and qualifications, the character and complexity of the case, prevailing market rates, and rates recently awarded by local district court judges, the Court deems a reasonable hourly rate to be $400 for Bickelman and $90 for dos Santos. See Ciolino v. Eastman, No. CV 13-13300-ADB, 2016 WL 6246757, at *2, *4 (D. Mass. Oct. 25, 2016) (setting hourly rate for experienced counsel at $400 per hour and for paralegal at $90 per hour). The Court finds that the proposed hourly rates for Otenti and Lombardo are reasonable under the circumstances.

The Otenti Declaration and accompanying time entry records demonstrate time reasonably spent on the case. Applying the modest reduction in the hourly rates described above, the Court finds that Plaintiff is entitled to recover $10,217.10 in attorney's fees and $914 in costs.[4]

---

[4] The time entry records accompanying the Otenti Declaration indicate that Bickelman, Otenti, Lombardo, and dos Santos frequently engaged in "block billing," that is, their records often "'describ[e] the type of work performed in a day and the total time spent on that work without

III.     **CONCLUSION**

Accordingly, the second renewed motion for entry of default judgment [ECF No. 22] is GRANTED.  Default judgment shall hereby enter against Defendants in the amount of $92,339.38, comprising of $71,843.93 in actual damages, $9,424.35 in prejudgment interest, $10,217.10 in attorney's fees, and $914 in costs.

**SO ORDERED.**

Date:  November 6, 2018                                               /s/ Allison D. Burroughs
                                                                                    ALLISON D. BURROUGHS
                                                                                    U.S. DISTRICT JUDGE

---

assigning separate time values to each separate task.'" Hermida v. Archstone, 950 F. Supp. 2d 298, 311 (D. Mass. 2013) (citation omitted).  Courts "disfavor the use of block billing 'because it requires decipher[ing] on the judges' part," and "have generally implemented global fee reductions of ten to twenty percent where block billing is utilized." Id. at 312.  Here, the Court finds that no reduction in attorney's fees is necessary because the vast majority of counsel's and dos Santos's time entries are for less than two hours, allowing the Court to easily evaluate the reasonableness of the hours billed.